**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, BOSTON CHAPTER; Tanya Bo-**man and Annie Hailey, **individually and on behalf of all persons similarly situated, Plaintiffs,**

v.

**BOSTON HOUSING AUTHORITY; Doris Bunte, as she is Administrator of the Boston Housing Authority; Raymond L. Flynn, as he is Mayor of the City of Boston and Receiver of the Boston Housing Authority; United States Department of Housing and Urban Development; Samuel Pierce, as he is Secretary of the Department of Housing and Urban Development; Massachusetts Executive Office of Communities and Development; and Amy S. Anthony, as she is Secretary of the Executive Office of Communities and Development, Defendants.**

Civ. A. No. 88–1155–T.

United States District Court,
D. Massachusetts.

Oct. 4, 1989.

Laura Steinberg, Mary N. Peterson, Sullivan & Worcester, and Barbara R. Arnwine, Nadine Cohen, Lawyers' Committee for Civ. Rights Under Law, Boston, Mass., for N.A.A.C.P., Boston Chapter, Tanya Boman and Annie Hailey.

Albert W. Wallis, First Asst. Corp. Counsel, City of Boston, Law Dept., Rod Solomon, Gen. Counsel, Boston Housing Authority, Richard M. Bluestein, Janet Steckel Lundberg, Krokidas & Bluestein, and Wayne A. Budd, Budd, Wiley & Richlin, P.C., Boston, Mass., for Boston Housing Authority, Doris Bunte, as she is Administrator of the Boston Housing Authority, and Raymond L. Flynn, as he is Mayor of the City of Boston and Receiver of the Boston Housing Authority.

MEMORANDUM

TAURO, District Judge.

The attached documents memorialize a step of significant social progress—a firm and unwaivering commitment to the objective of providing equal housing opportunity

for persons of all races in the city of Boston.

It took only a few minutes for the parties to sign the consent decree I have just approved. But let no one misunderstand that the relative ease of this ceremonial act was made possible only by more than a year of extremely difficult and challenging negotiations.

Of course, being involved in a federal lawsuit is never as pleasant as a day at the beach. And when the issues underlying a federal case involve fundamental matters of constitutional magnitude the potential for protracted and divisive litigation is enormous.

To their credit, the plaintiffs and the defendants here recognized that, if this case were to be tried fully, the costs would be incalculable—not only in terms of time and money, but more important, in terms of the potential negative impact on the morale of this great city.

Some of you may remember that, on the first day scheduled for trial, the lawyers for both sides requested a private conference with me here at the bench. Lead counsel, Barbara Arnwine for the plaintiffs and Albert Wallis for the defendants, asked me to help them settle the case. We adjourned to my lobby and I spent most of the next three hours listening and asking questions, as the lawyers outlined the factors that divided them and led to this lawsuit.

It was clear to me that emotions were high, feelings were strong, and the gap between the parties was as wide and deep as the grandest of canyons.

But what also came through to me was that, despite their adversarial spirit and tone, these lawyers were willing to dedicate themselves to the task of bringing about a remedial solution, rather than subject the city to the almost inevitable volatility that would accompany highly charged litigation.

There seemed to be an unstated determination on the part of everyone in the room that Boston would not become a Yonkers.

At that lobby conference, I outlined an agenda under which I would work with the lawyers in an effort to achieve a settlement agreement satisfactory to all concerned. When we came out of that meeting, I reported in open court that the litigation process was now on the back burner, and that a serious negotiation effort would be undertaken.

And that's where we've been for more than a year. Dozens of tough and often confrontational working sessions. Draft after redraft of proposals and counter-proposals. On many occasions it seemed we were· at a dead end. And then, somehow, perhaps because of some divine guidance or inspiration, a thought would emerge that provided a crack of light in what had been a seemingly impenetrable wall. One step back, but two steps forward. A frustrating process, but somehow we knew we were making progress.

The documents we signed today are the product of that effort. They aren't perfect. No settlement is perfect. But they do manifest an enlightened commitment and dedication to the concept that all persons in this city will be assured of equal housing opportunities—and that never again will race or ethnic background be permitted to affect the housing choice of any man, woman, or child.

Some might say that it's unfortunate that it took a federal lawsuit to bring us where we are today. And that may be so. But, in another sense, it is important to understand that we live in an imperfect world. Recognition of that reality is undoubtedly one of the reasons why the Founders had the foresight to set up the Judiciary, as an independent and equal Third Branch of government—to be truly responsive when, for some reason, a member of the community suffers apparent constitutional deprivation.

But, the courts cannot function alone in matters like this. The process works best when the underlying case is in the hands of able, dedicated, and hardworking lawyers. And that's what we had here:

Barbara R. Arnwine and Nadine Cohen—
 Lawyers' Committee for Civil Rights
 Under Law (for NAACP)
Everald F. Thompson—NAACP

Laura Steinberg, William P. Stimson and Lynn Peterson Read—Sullivan & Worcester (for NAACP)

Albert W. Wallis—City of Boston/BHA/Doris Bunte/Mayor Flynn

Rod Solomon—BHA, et al.

Richard M. Bluestein and Janet Steckel Lundberg—Krokidas & Bluestein (for BHA, et al.)

Douglas H. Wilkins—Massachusetts Executive Office of Communities and Development

Judith Yogman and Christine M. Roach—U.S. Department of Housing and Urban Development

Each of these fine lawyers met their enormous responsibilities with the highest degree of professionalism as they represented the interests of their various clients, and I congratulate them for the great job they have done in bringing us to where we are today.

And I want to close these remarks by making clear my firm feeling that the tone which made possible the substantive and symbolic achievement we recognize today had to come from the top. Dr. Benjamin Hooks, the executive director of NAACP, and Ray Flynn, the mayor of Boston, provided the patience and guidance that enabled those on the front lines of negotiation to hammer out and finalize this consent decree. I commend both Dr. Hooks and Mayor Flynn for the critically important leadership they have provided.

## SETTLEMENT AGREEMENT

### I.

This Settlement Agreement is in furtherance of the Parties' mutual objective of providing equal housing opportunity for persons of all races in the City of Boston.

### II.

By entering into this Settlement Agreement the parties to this agreement have resolved the issues raised by plaintiffs' complaint, as amended, thereby avoiding potentially divisive and protracted litigation.

### III.

Consistent with the provisions of *City of Richmond v. J.A. Croson Co.,* 488 U.S. ——, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989), this Settlement Agreement is made in recognition of, and in consideration of, the Preliminary Findings of Non–Compliance with Title VI of the Civil Rights Act of 1964 contained in the Investigative Report of the United States Department of Housing and Urban Development ("HUD") and all the pleadings, memoranda and other papers which have been submitted to the court in connection with this litigation.

### IV.

This Settlement Agreement incorporates by reference the terms of the Stipulation approved by the court on August 26, 1988, and the amendments thereto approved by the court on September 30, 1988. Said Stipulation and amendments are attached hereto as Appendix A.

### V.

Class certification and notification procedures in furtherance of this Settlement Agreement are intended to ensure that as many class members as possible are located, and to prevent attrition of the class. To those ends:

A) Defendants agree not to oppose an amendment of the complaint to broaden the class definition to include all minorities, as that term is defined in the Agreement for Voluntary Compliance with Title VI of the Civil Rights Act of 1964 (the "VCA"), dated

June 14, 1988, between HUD and the Boston Housing Authority ("BHA").

B) The Parties will stipulate to certification of a class based on such facts as support appropriate findings under Fed.R. Civ.P. 23(b)(2).

C) The class is to be defined generally to include all minority applicants to the BHA who sought or inquired about BHA housing prior to June 14, 1988, and who have claimed or may claim to have been the subject of any discrimination based on race with respect to obtaining such housing.

D) BHA defendants will bear the cost of all notification procedures included in this Settlement Agreement, exclusive of any costs incurred by the plaintiffs in furtherance of any ancillary outreach program conducted in accordance with the provisions of § V, ¶ E.

E) Plaintiffs' counsel shall be provided with the list of the names, last known addresses and social security numbers, if available, of all class members. Such information may be used by plaintiffs' counsel in furtherance of any ancillary outreach programs intended to locate class members. Said information is otherwise to be treated as confidential. Plaintiffs' counsel may verify the process by which such list was prepared.

F) The BHA shall notify members of the class of this Settlement Agreement and the Rule 23 certification and fairness hearing in accordance with the timetable contained in Appendix B.

A Hearing Notice printed in English and Spanish, which shall be subject to court approval, shall describe the parties, the lawsuit and claims made therein, defendants' position, the negotiation process, the intended categories of beneficiaries, the proposed settlement and procedures for applying for benefits. Additionally, such Hearing Notice shall inform the recipient of the date of the fairness hearing and the right to participate therein, either individually or through counsel.

The Hearing Notice is to be mailed to the last known address of the following prospective class members: i) people on the VCA and Stipulation remedial waiting lists; ii) people who qualify for remedial waiting lists, but have not been previously located, or have withdrawn; iii) people already housed from remedial waiting lists; iv) people adjudicated discouraged; v) minorities housed as emergencies in developments where minorities predominated from October 1983 to June 1988; vi) minorities on the Charlestown waiting list after February 1, 1988; and vii) all named plaintiffs.

The BHA also shall publish legal notice, with tag lines in Spanish and Chinese, of the class certification and fairness hearing in *The Boston Herald, The Boston Globe, The Bay State Banner* and *El Mundo.*

G) A Claim Notice printed in English and Spanish, which shall be subject to court approval, shall be mailed to each class member designated for payment by § VII, ¶ A–C, in accordance with the timetable contained in Appendix B. In addition, in order to maximize the notification process, the BHA shall conduct computer matches of the names and social security numbers of those class members to be mailed the Claim Notice, and not previously located, with records of the Department of Public Welfare, Department of Social Services and the Registry of Motor Vehicles. A Claim Notice shall be mailed by such agencies to each person for whom there is a match at each and every address that has been obtained from whatever source. The foregoing shall be conditioned upon the agreement of the agency involved to make the match. The BHA will make every effort to obtain such consent. As to each agency solicited, the BHA shall provide plaintiffs' counsel with the following information: number of names submitted to each agency; date of match; number of matches found under names and under social security numbers (a match under either name or social security number shall be sufficient to generate a mailing); date on which Claim Notices were mailed; and the number of Claim Notices mailed. Plaintiffs' counsel may monitor this matching effort by providing control names, addresses and social security numbers to be added to those submitted to the various agencies.

H) In addition to the procedure for mailing Claim Notices, the BHA shall publish a Listing Notice, whose size and content shall be subject to court approval, once a month for two consecutive months, in *The Boston Herald, The Boston Globe, The Bay State Banner* and *El Mundo*. Said Listing Notice is to contain the names (but not other identifying data) of all class members to whom the Claim Notice was mailed but has not been delivered by the above described mailing process. The Listing Notice is to inform, in English and Spanish with a tag line in Chinese, that the individuals named are entitled to up to $2500 in connection with settlement of litigation alleging racial discrimination in Boston's public housing. Plaintiffs' counsel and the NAACP shall be free to further disseminate such Listing Notice without cost to defendants.

## VI.

A simple application procedure for benefits shall be established. Class members, or beneficiaries of deceased class members, who receive Claim Notice by mail, as described in § V, ¶ G above, must respond by the enclosed application within 90 days from the postmark date. Class members, or beneficiaries of deceased class members, notified by a Listing Notice, as described in § V, ¶ H above, must respond by application within 180 days of the date of the last publication.

An application form printed in English and Spanish (to be agreed upon by the parties) shall call for the applicant to provide a current address, telephone number, social security number, one other piece of information found on housing application forms that only the applicant would be likely to know (i.e. names and birthdates of children) and the applicant's signature. Additionally, the applicant shall provide the name, address and telephone number of a person likely to be apprised of a new address for the applicant should the applicant's address change.

The BHA, National Association for the Advancement of Colored People, Boston Chapter ("NAACP") and Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee") shall offer assistance in filling out these application forms. Application forms shall be submitted by mail or in person by applicants to the Lawyers' Committee and/or the Clerk of the United States District Court.

Any dispute as to the timeliness or validity of any application shall be resolved by the court.

## VII.

A) The BHA shall pay $2500 to each of the following class members, except those housed as emergencies who are provided relief in § VII, ¶ B below: i) people on the VCA and Stipulation remedial waiting lists; ii) people who qualify for remedial waiting lists, but have not been previously located, or have withdrawn; iii) people already housed from remedial waiting lists; and iv) people adjudicated discouraged.

B) The BHA shall pay $1000 to minorities housed as emergencies in developments where minorities predominated from October 1983 to June 1988, even if such minorities were offered remedial housing or a remedial transfer, or would have been offered remedial housing or a remedial transfer if they were still eligible for public housing.

Minorities who were housed as emergencies in developments where minorities predominated prior to October 1983 shall receive no monetary award under this Settlement Agreement, and shall not be bound by the terms of this paragraph. The NAACP and the Lawyers' Committee agree not to represent, or assist in representing, these individuals with respect to any claim for damages to which they may be entitled based on their status as pre–1983 emergencies.

C) The BHA shall determine the number of whites who applied for housing after February 1, 1988 and were housed in 2 & 3 bedroom units from the Charlestown waiting list ("Charlestown vacancies"). The BHA shall pay $500 to that number of minorities on that waiting list as it existed on February 1, 1988, starting at the top of that list.

D) Except for payments to the Charlestown applicants, described in § VII, ¶ C above, no applicant shall be paid additional amounts as a result of eligibility in more than one category.

E) The BHA shall pay to all named plaintiffs an aggregate amount of $120,000, which shall be divided by them in whatever manner they deem appropriate. Payment to the named plaintiffs shall take place 60 days after final approval of this Settlement Agreement by the Court following the Rule 23 class certification and fairness hearing.

F) Plaintiffs Boman and Hailey shall be placed on the remedial waiting list in the order in which they would have been placed pursuant to the Stipulation.

G) All monies to be paid under this Settlement Agreement shall be disbursed according to the following schedule:

i) 50% of the settlement to be paid by April 15, 1990;

ii) 75% of the settlement to be paid by April 15, 1991;

iii) 100% of the settlement to be paid by April 15, 1992.

On each of these dates, the BHA shall pay these sums into an interest bearing account. Payments to the class members shall be made from this account as soon as practicable after the date of payment into the account. Payment to class members shall be mailed no later than two weeks following deposit of the monies into the account and a statement of compliance, containing a list of recipients, to that effect shall be filed with the court.

H) Receipt of a damage payment shall not affect any class member's eligibility for public housing, nor shall such payments be counted as income for purposes of determining rental payments to the BHA within the meaning of 24 C.F.R. § 913.106(c)(3) and (9) or 760 C.M.R. § 7.03. Defendants are to undertake all reasonable efforts to acquire the consent of the Massachusetts Executive Office of Communities and Development ("EOCD") and HUD to this provision. The parties will jointly petition other public welfare agencies to preserve class members' eligibility for any other governmental assistance program.

## VIII.

In so far as may be consistent with applicable law, any class member who would have been eligible for BHA housing, but is no longer eligible due to a subsequent increase in income, shall be treated for the purpose of determining remedial housing eligibility as if that applicant had actually received and continues to occupy BHA housing. Such class members, thereafter, shall be eligible under BHA's generally applicable policy with regard to over-income tenants.

## IX.

From damages funds due to class members under § VII, ¶ A–C, but not claimed, an amount not to exceed $500,000, will be placed in a Community Benefit Fund (the "Fund"). In any event, the BHA shall pay no less than $250,000 to the Fund. The Fund shall be kept in an interest bearing escrow account in the names of, and to be jointly administered by the NAACP and the BHA. Payment into the Fund shall be based on the same schedule as contained in § VII, ¶ G above.

The Fund will be administered by a five person Advisory Board to be appointed in the following manner: two members selected by the NAACP, Boston Chapter, two members selected by the BHA defendants. The fifth member is to be selected by the court and will serve as Chair of the Advisory Board. The Advisory Board shall have broad authority to administer the Fund, consistent with the parties' objective of providing equal housing opportunity for persons of all races in the City of Boston. The Advisory Board's decisions shall be by majority vote. Within 60 days after its appointment, the Advisory Board shall advise the court as to the approximate amount of time needed to accomplish its assignment. The court shall, thereafter, determine a schedule for further reporting.

## X.

It shall be within the sole discretion of the court to determine whether the appointment of a monitor is necessary.

## XI.

The BHA shall provide quarterly reports to plaintiffs' counsel advising as to the progress of implementation of this Settlement Agreement and the VCA in addition to any reports required to be provided under the Stipulation. Additionally, the BHA shall simultaneously provide plaintiffs' counsel with copies of all additional reports that it submits to either HUD or EOCD pursuant to this Settlement Agreement, the VCA or the Stipulation.

## XII.

Plaintiffs will file a separate application with the court for attorney fees.

## XII.

This court shall retain jurisdiction over this litigation pending complete implementation of this Settlement Agreement and the Stipulation. Following complete implementation, this action shall be dismissed.

## XIV.

Nothing in this Settlement Agreement nor the Stipulation shall be construed to prohibit plaintiffs from bringing a separate lawsuit challenging the new Tenant Selection and Assignment Plan (TSAP), as finally implemented.

Dated at Boston, Massachusetts this 4th day of October, 1989.

National Association for the Advancement of Colored People, Boston Chapter, Tanya Boman and Annie Hailey,

/s/ Annie R. Hailey

Annie Hailey

/s/ Tanya Boman

Tanya Boman

/s/ Louis A. Elisa II

Louis A. Elisa II

President, National Association for the Advancement of Colored People, Boston Branch

451 Massachusetts Avenue

Boston, Massachusetts 02118

/s/ Dianne Wilkerson

Dianne Wilkerson

Chair, Housing Committee

National Association for the Advancement of Colored People, Boston Branch

451 Massachusetts Avenue

Boston, Massachusetts 02118

By their attorneys,

/s/ Barbara R. Arnwine

Barbara R. Arnwine BBO# 543143

Lawyers' Committee for Civil Rights Under Law

1400 Eye Street, Suite 400

Washington, DC 20005

(202) 371–1212

/s/ Nadine Cohen

Nadine Cohen BBO# 090040

Lawyers' Committee for Civil Rights Under Law

294 Washington Street

Boston, Massachusetts 02108

(617) 482–1145

/s/ Everald Thompson

Everald Thompson

National Association for the Advancement of Colored People National Office

4805 Mt. Hope Drive

Baltimore, Maryland 21215

(301) 486–9185

/s/ Willie P. Stimson

Laura Steinberg BBO# 478440

William P. Stimson BBO# 481010

Lynn Peterson Read BBO# 551671

Sullivan & Worcester

One Post Office Square

Boston, Massachusetts 02109

(617) 338–2800

Boston Housing Authority; Doris Bunte, as she is Administrator of the Boston Housing Authority; and Raymond L. Flynn, as he is Mayor of the City of Boston and Receiver of the Boston Housing Authority

By their attorneys,

/s/ Albert W. Wallis

Albert W. Wallis

First Assistant Corporation Counsel

City of Boston

Law Department

Room 615, City Hall

Boston, Massachusetts 02201

(617) 725–4020

/s/ Rod Solomon

Rod Solomon

General Counsel

Boston Housing Authority

52 Chauncy Street

Boston, Massachusetts 02111

(617) 451–1250

/s/ Richard M. Bluestein

Richard M. Bluestein

Janet Steckel Lundberg

Krokidas & Bluestein

One Milk Street

Boston, Massachusetts 02109

(617) 482–7211

It is so ORDERED:

/s/ Joseph L. Tauro

Joseph L. Tauro

United States District Judge

## APPENDIX A

### STIPULATION [AS AMENDED]

[filed Aug. 26, 1988.]

By entering into this Stipulation the parties intend to further their mutual objective of providing equal housing opportunity for persons of all races. The Plaintiffs, National Association for the Advancement of Colored People, Boston Chapter ("NAACP"), Tanya Boman and Annie Hailey (collectively, the "Plaintiffs"), and the defendants, Boston Housing Authority ("BHA"), Doris Bunte, as she is Administrator of the BHA ("Bunte") and Raymond L. Flynn, as he is Mayor of the City of Boston and Receiver of the BHA ("Flynn"), by their respective attorneys, hereby stipulate and agree that the following may be approved by the Court in this action. The BHA agrees to immediately request that the United States Department of Housing and Urban Development ("HUD") allow it to proceed with the following activities, some of which may be inconsistent with the Agreement for Voluntary Compliance with Title VI of the Civil Rights Act of 1964 (the "VCA"), which was signed by Bunte and

1. The term minority as used in this Stipulation shall have the same meaning as set forth in the

Flynn on June 7, 1988 and by various HUD officials on June 7, 1988 and June 14, 1988 and a true copy of which was submitted with Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction, dated July 12, 1988 (the "Application"). This Stipulation (the "Stipulation") shall become effective seven (7) days after approval of the Court, unless HUD or the defendant Massachusetts Executive Office of Communities and Development ("EOCD") shall file an opposition which sets forth with particularity their specific objections to any section they find objectionable. The parties will have seven (7) days to respond to any such objections. The parties request that the Court set hearing on any objections within fourteen (14) days after the parties' responses to any objections.

1. Whereas the BHA is implementing the VCA, it agrees in accordance with the preamble of this Stipulation to the following additional terms and conditions:

(A) *Expansion to Certain Pre–1983 Applicants:* Minority applicants [1] who fit within the description of Categories 1 (Mary Ellen McCormack, Old Colony or Charlestown) and 3 (Emergency) of the VCA, and who for Category 1 applied to the BHA from October 31, 1978 to October 1, 1983, and who for Category 3 were housed by the BHA from October 31, 1978 to October 1, 1983, shall be provided the relief offered to persons deemed disadvantaged under the VCA, except as to those persons already subject to identification under the VCA. Such relief shall be offered at a time as near as practicable to the time which would be contemplated by the VCA for disadvantaged persons with the persons' application date. Such persons will be identified and noticed pursuant to the following alternative procedures.

(i) *Identification and Notice To Applicants for Mary Ellen McCormack,*

VCA.

*Old Colony and/or Charlestown.* The BHA will identify all minority applicants to Mary Ellen McCormack, Old Colony and/or Charlestown from October 31, 1978 to October 1, 1983 for inclusion in Category 1(A), except as to those persons already subject to the identification under the VCA. The BHA will undertake the following notice:

(a) The BHA will notify such applicants who are still on the waiting list immediately by letter.

(b) The BHA will mail a letter during the ninety (90) day claim period as defined in Section 1(B)(v) below (hereinafter the "claim period") to the last known address of each of the persons which it identifies as disadvantaged who applied to the BHA between October 31, 1978 and October 1, 1983 and whose application was withdrawn. The letter will be in the form of Exhibit A. The BHA will send the letter within the first fourteen (14) days of the claim period, and such applicant must respond during the claim period.

(c) The BHA also will undertake the public notice set forth below in Section 1(B)(v) with respect to such withdrawn applicants.

(ii) *Identification and Notice for Emergency Placements:* The BHA will put the following notice with respect to minority emergency applicants housed from October 31, 1978 to October 1, 1983, in the first and second possible rent notice after the commencement of the claim period.

YOU MAY HAVE HOUSING TRANS-
 FER RIGHTS IF:

If you were housed by the BHA between October 31, 1978 and October 1, 1983 as an emergency, you may have a right to a transfer to a development *WHERE YOUR RACE IS IN THE MINORITY.* If you were such an emergency placement, please return this form to the BHA at the address set forth below as soon as possible. YOUR RESPONSE TO THE BHA MUST BE POSTMARKED NO LA-TER THAN MIDNIGHT ON _____ OR YOU WILL LOSE RIGHTS OR BENEFITS THAT YOU MAY HAVE BEEN ENTITLED TO.

MORE INFORMATION ABOUT THESE OPPORTUNITIES MAY BE OBTAINED FROM:

THE LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER THE LAW
 (617) 482–1145
 and

THE BOSTON HOUSING AUTHORITY
 (617) XXX–XXXX
 [DIFFERENT LANGUAGES]

---

I wish to hear more about this opportunity
 Name:
 Address:
 Social Security Number:
 Return this form to:
 Boston Housing Authority
 [Address & Phone]

Any such emergency applicants who respond within the claim period will be included in Category 1(A) of this Stipulation.

(B) *Discouraged Applicants.* Any minority applicant who is determined pursuant to the provisions herein to have been discouraged from applying to any development where the applicant's race did not predominate, as such phrase is defined in the VCA, will be determined to have been disadvantaged by BHA for purposes of the VCA.

"(i) The American Arbitration Association (hereafter "AAA") will appoint pursuant to the Procedural Guidelines For the Conduct of Hearings contained in the attached Order of Reference, a hearing examiner (the "hearing examiner"), from a racially diverse panel of hearing examiners, to hear each such case for the purpose of identifying minority persons who have been discouraged. Hearing examiners will conduct hearings pursuant to the Procedural

Guidelines for the Conduct of Hearings; provided that in the case of any inconsistency between such Procedural Guidelines and this Stipulation, this Stipulation shall govern."

(ii) The hearing examiner will have the authority to conduct proceedings upon applications of minority persons who claim to have been discouraged (the "Claimants"). In order to be determined discouraged, a Claimant must satisfy all of the following criteria.

(a) The Claimant must have filed a formal application for BHA housing between July 15, 1982 and the date of the VCA. The Claimant must have been determined to have been preliminarily eligible for public housing by the BHA at the time of application.

(b) The Claimant must have been directly influenced by a statement or act of a BHA employee, acting in an official capacity, made or done because of race, not to apply to a development where his/her race did not predominate. Such statement or act must be one which would have caused a reasonable person under the circumstances to be so influenced.

(iv) The hearing examiner will take the following factors into consideration when making his/her determination and must make specific findings of fact as to each:

(a) The presence or absence of corroboration, either in the form of witnesses or documentary evidence.

(b) Whether or not the claimant altered his/her choice as a result of the statements or acts of the BHA employee.

(c) Whether the statements made by the BHA employee were true.

(d) The intent of the BHA employee making the statement or committing the act.

(v) *Notice:* There will be a period of ninety (90) days during which individuals can file claims (the "claim period"). The claim period shall commence on October 3, 1988 and end on January 9, 1989. No later than 14 days after the claim period commences, the BHA will, at its own expense undertake the following combined notice to discouraged and pre–1983 minority applicants whose applications were· withdrawn:

(a) All notices shall bear the following language (the "Notice"):

## YOU MAY HAVE BHA HOUSING OPPORTUNITIES

You may have certain rights and be entitled to certain benefits, including but not limited to, priority housing (or transfer) to a Boston Housing Authority ("BHA") ·development, IF:

1) *DISCOURAGED APPLICANTS:* If you believe that you were discouraged by the BHA or any of its employees from applying between July 15, 1982 and June 14, 1988 for a unit at a public housing development *WHERE YOUR RACE WAS IN THE MINORITY,* you may have certain rights and be entitled to certain benefits, even if you have received housing. However, in order to qualify you must fill out a claim form and submit it to the American Arbitration Association (AAA). YOUR CLAIM FORM MUST BE RECEIVED BY HUD NO LATER THAN 5 P.M., OR POSTMARKED NO LATER THAN MIDNIGHT ON _____, OR YOU WILL LOSE RIGHTS OR BENEFITS THAT YOU MAY HAVE BEEN ENTITLED TO AND YOU MAY LOSE THE RIGHT TO HAVE YOUR CLAIM CONSIDERED.

For more information, and to obtain a claim form, contact AAA at:

American Arbitration Association
230 Congress St.
Boston, MA 02110
Attention: Christine Newhall
Telephone: 451–6600

2) *Withdrawn Applicants:* The BHA also is seeking minority applicants who applied for housing between October 31, 1978 and October 1, 1983 at the Charlestown, Old Colony and/or Mary Ellen McCormack developments and whose applications were withdrawn. If you are a applicant whose applica-

 

tion was withdrawn and you did not receive a letter regarding a possible right to priority housing, you should contact the BHA. Please call the BHA at _____ as soon as possible AND IN NO EVENT LATER THAN _____, to find out if your name is on the list of withdrawn applicants.

MORE INFORMATION ABOUT THESE OPPORTUNITIES MAY BE OBTAINED FROM:

THE LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER THE LAW (617) 482–1145

and

THE BOSTON HOUSING AUTHORITY (617) XXX–XXXX

[DIFFERENT LANGUAGES]

(b) The BHA will prepare a poster with the foregoing Notice to measure $20\frac{3}{4} \times 16\frac{1}{4}$ inches. Three (3) copies of this poster will be mailed to each of the public and private agencies listed on Exhibit B hereto no later than 14 days after the claim period commences. All such agencies will be urged to display the posters in prominent places at their respective offices for the duration of the claim period. At least ten (10) copies of the poster also will be displayed in prominent places at the BHA Central Office and one (1) copy of the poster will be displayed at the BHA Management Office at each BHA family development. The BHA also will mail two posters to each local tenant task force at family developments no later than 14 days after the claim period commences for posting in task force offices and elsewhere. The BHA will provide for a means of translating the Notice as appropriate with respect to the targeted population.

(c) The BHA will develop a flyer with the Notice to measure $8\frac{1}{2} \times 11$ inches. One hundred (100) copies of the flyer will be mailed to each of the private agencies and fifty (50) copies to each of the public agencies listed on Exhibit B hereto no later than 14 days after the claim period commences. The BHA will promptly provide additional copies to any such agency upon request. All such agencies will be urged to distribute the flyers to their clients during the claim period. The BHA also will mail two flyers to each local tenant task force at family developments no later than 14 days after the claim period commences. The BHA also will distribute a flyer to each of its present tenants with the first rent Notice as soon as possible after the commencement of the claim period. The BHA will provide for a means of translating the Notice as appropriate with respect to the targeted population.

(d) The BHA will arrange and pay, if necessary, for the Notice to appear three (3) times within the claim period in each of the newspapers listed on Exhibit C, on a schedule to be provided by the Plaintiffs. The Notice will be at least $\frac{1}{8}$ of a page. In addition, the BHA will request that each of the newspapers listed on Exhibits C and D run the Notice as a public service announcement during the claim period. The BHA will request that the public service announcements be at least $\frac{1}{4}$ of a page. The BHA also will request that the radio and television stations listed on Exhibit E broadcast the Notice as a public service announcement as frequently as possible during the claim period. The BHA will provide for a means of translating the Notice as appropriate with respect to the targeted population.

(e) Nothing contained in this Stipulation will prohibit the NAACP or the Plaintiffs from advertising, at their own expense, the availability of the procedures provided herein to determine whether an applicant was discouraged.

(vi) The following procedure will be followed:

(a) The BHA will prepare claim forms substantially in the form set forth in Exhibit F. The BHA also will

provide fifty (50) copies of such forms to each of the private agencies and twenty-five (25) copies to each of the public agencies listed on Exhibit B. The BHA will promptly provide additional copies to any such agencies upon request. The BHA will provide a means of translating the claim form as appropriate with respect to the targeted population.

(b) AAA and the BHA will furnish each Claimant who contacts them with a claim form.

(c) Each claim form returned to AAA or the BHA will be dated and time stamped. The BHA promptly will provide to AAA the original of any claim form returned to it. AAA promptly will provide copies to the Lawyers' Committee.

(d) In order to have the opportunity to present his/her claim to the hearing examiner, the Claimant's completed claim form must be received by AAA or the BHA no later than 5:00 p.m., or must be properly addressed to AAA or the BHA and be postmarked no later than midnight, on the last date of the claim period.

(e) The hearing examiner will commence the process for individual hearings upon Claimants' claims as soon as practicable after the closing of the claim period, but in no event later than twenty-one (21) days after the closing of the claim period. In conducting such hearings, except as specifically limited herein, the hearing examiner may regulate all proceedings and do all acts and take all measures necessary or proper for the efficient performance of his/her duties; may require the production of evidence of any kind; may rule upon the admissibility of evidence; may put witnesses on oath and may him/herself examine them and may call the parties in the action and examine them on oath. Evidence may be admitted and given probative effect if it is relevant and is the kind of evidence on which reasonable persons are accustomed to rely. Claimants will

have the right to a copy of his/her BHA Applicant File at least seven (7) days prior to his/her hearing upon timely request. Each party shall have the right to a copy of any documents of the other that may be introduced at the hearing; to be represented by a person of his/her/its choice at each party's own expense; and to present evidence and arguments, controvert evidence relied upon by the other party and confront and cross-examine all witnesses. The hearing examiner shall enter findings of fact upon each claim, and shall enter conclusions of law whether each Claimant has been discouraged as defined herein (See pp. 6–7). The hearing examiner's findings of fact shall be final, but the hearing examiner's adherence to the standards set forth herein or other conclusions of law may be appealed to the District Court Judge.

(f) To the extent AAA is unable to do so, the BHA will provide translation services as necessary to Claimants throughout this procedure.

(g) After final determination that a Claimant has been discouraged as defined herein, the Claimant will be provided the relief offered to persons deemed disadvantaged under the VCA. Such relief shall be offered at a time as near as practicable to the time which would be contemplated by the VCA for disadvantaged persons with the Claimants' application date.

(h) Nothing in this part 1(B) shall entitle any Claimant/applicant already receiving a remedial housing offer under the VCA to receive any additional remedial housing offer.

2. *Provision of Information:* The BHA will provide information to the NAACP on the progress made in implementation of this Stipulation every thirty (30) days for the first one hundred and twenty (120) days after the effective date of this Stipulation and thereafter once every three (3) months until the last remedial placement occurs under this Stipulation. Such information will include but not be limited to a description of all activities undertaken in order to implement this Stipulation, including, but

not limited to a copy of all notices, flyers, posters and advertisements prepared in accordance with this Stipulation, a copy of all forms of correspondence to agencies, tenants or applicants required by this Stipulation, a list of the Remedial Waiting List and Remedial Transfer List as presently constituted, and a list of all placements offered, made or attempted under the VCA or this Stipulation; however, all information which otherwise would identify individuals may be listed in a non-identifying manner, except where information on a particular individual is authorized by that individual to be released. In addition, the BHA will send copies of all correspondence with HUD, EOCD or the Massachusetts Commission Against Discrimination ("MCAD") concerning implementation or interpretation of the Stipulation simultaneously to the NAACP. The NAACP likewise will send copies of all correspondence that it has with HUD, EOCD or MCAD concerning implementation or interpretation of this Stipulation simultaneously to the BHA. Notwithstanding the foregoing, neither party is obligated to provide such correspondence relating to settlement. For purposes of this paragraph, the information provided will be considered properly made if delivered to the NAACP by hand to The NAACP/Boston Chapter Housing Committee, c/o Dianne Wilkerson, Chair, Roche Carens & DeGiacomo, One Post Office Square, 15th Floor, Boston, Massachusetts 02109 and to Sullivan & Worcester, One Post Office Square, Boston, Massachusetts 02109 (Attn.: Mary N. Peterson, Esq.), counsel to Plaintiffs, and to the BHA by hand to the BHA Administrator, 52 Chauncy Street, Boston, MA 02111, and to BHA General Counsel, 52 Chauncy Street, Boston, MA 02111.

3. In July 1988 the BHA formed a Voluntary Compliance Committee ("Committee") to review activities undertaken pursuant to the VCA. The NAACP has accepted an invitation to sit on such Committee. As a member of the Committee, the NAACP will receive a copy of all reports and written information provided to the Committee.

4. *Stay of Discovery.* The parties agree to a thirty (30) day stay of discovery following the effective date of this Stipulation subject to the following conditions:

(A) The parties will engage in negotiations to settle the lawsuit pursuant to an established schedule; and

(B) The parties will agree to an informal exchange of information as needed for such discussions.

5. *Named Individual Plaintiffs.* At the option of Tanya Boman and/or Annie Hailey, the BHA will undertake the following:

(A) The BHA will arrange for Ms. Boman and/or Ms. Hailey to meet privately with a BHA employee mutually agreeable to the Plaintiffs and the BHA (the "BHA Employee") at least seven (7) days before the commencement of hearings on discouraged applicants. Counsel may attend such meetings. Ms. Boman and/or Ms. Hailey will discuss the circumstances of their applications to the BHA, and each party may bring any other persons with knowledge of the circumstances to such meetings. The BHA Employee will make a good faith determination as to whether Ms. Boman and/or Ms. Hailey were discouraged. If the determination is that Ms. Boman and/or Ms. Hailey were discouraged the BHA will give her/them a place on the remedial waiting list in accordance with her/their application date(s). The meetings will be informal and no statements made at such meetings may be used as admissions.

(B) If the determination is that Ms. Boman and/or Ms. Hailey were not discouraged she/they will have the option of being the first (or second) Claimant to be heard before the hearing examiner.

6. *Effect of Stipulation:* Nothing in this Stipulation will operate to prejudice the claims or defenses of any party to this action with respect to any matter not a subject of this Stipulation. Without limiting the generality of the foregoing, nothing herein shall prejudice the Plaintiffs' claims for monetary damages (except as set forth

below), standing, class certification, or the provision of information relating to matters not covered in this Stipulation, or any defenses thereto.

This Stipulation will finally dispose of all issues raised by the Plaintiffs in the Application. By this Stipulation, the Plaintiffs waive the following claims:

(A) Those minority persons eligible for remedial housing under the VCA and this Stipulation are precluded from seeking other remedial housing.

(B) Those minority persons who applied to the Maverick development or to sub-plan developments or open-housing preference developments other than Mary Ellen McCormack, Old Colony and/or Charlestown are precluded from seeking remedial housing.

(C) The Plaintiffs agree that they will not challenge the VCA, except that they reserve their right to challenge the tenant selection and assignment plan as finally implemented.

(D) Nothing in this agreement will preclude minority applicants claiming to have been discriminated against by the BHA from seeking monetary damages or other relief in law or equity, other than as expressly set forth above, except that those purportedly discouraged applicants who either fail to file a claim within the ninety (90) day claim period or do not prevail at the hearing before the hearing examiner, as set forth below, will be precluded from seeking such monetary damages.

7. *No prevailing parties; no admissions.* With regard to the matters contained herein, no party shall be considered to be the prevailing party. Nothing contained herein shall constitute or be construed as an admission of liability or of any fact or legal conclusion, by any party.[2]

National Association for the Advancement of Colored People, Boston Chapter, Tanya Boman and Annie Hailey

By their attorneys,

---

**2.** Exhibits referred to herein are in draft form. Final exhibits, modified only to the extent contemplated by the text of this document, will be

/s/ Mary N. Peterson
Laura Steinberg
Mary N. Peterson
Sullivan & Worcester
One Post Office Square
Boston, Massachusetts 02109
(617) 338–2800

/s/ Barbara R. Arnwine

/s/ Nadine Cohen
Barbara R. Arnwine
Nadine Cohen
Lawyers' Committee for Civil Rights Under the Law
294 Washington Street
Boston, Massachusetts 02108
(617) 482–1145
Boston Housing Authority; Doris Bunte, as she is Administrator of the Boston Housing Authority; and Raymond L. Flynn, as he is Mayor of the City of Boston and Receiver of the Boston Housing Authority

By their attorneys,

/s/ Albert W. Wallis
Albert W. Wallis
First Assistant Corporation Counsel
City of Boston
Law Department
Room 615, City Hall
Boston, Massachusetts 02201
(617) 725–4020

/s/ Rod Solomon
Rod Solomon
General Counsel
Boston Housing Authority
Room 615, City Hall
Boston, Massachusetts 02201
(617) 482–7211

/s/ Richard M. Bluestein
Richard M. Bluestein
Janet Steckel Lundberg
Krokidas & Bluestein
One Milk Street
Boston, Massachusetts 02109
(617) 482–7211

/s/ Wayne A. Budd
Wayne A. Budd
Budd, Wiley & Richlin, P.C.

submitted to the court by the close of business on Tuesday, August 30, 1988.

75 Arlington Street
Boston, Massachusetts 02116
(617) 482-3300

It is so ORDERED:
/s/ Joseph L. Tauro
The Honorable Joseph L. Tauro
United States District Judge

EXHIBIT A

August ___, 1988

Dear Withdrawn Applicant:

We are writing to people who previously applied for or were housed in an apartment operated by the Boston Housing Authority (BHA). There is a possibility that you may have been denied housing in accordance with the BHA written tenant selection and assignment plan existing at the time you should have received an offer.

YOU MAY BE ENTITLED TO PRIORITY IN SELECTION FOR BHA HOUSING, EVEN THOUGH YOU ARE NO LONGER AN APPLICANT OR TENANT.

If we determine that you are currently eligible for BHA housing, you will be entitled to receive priority selection for housing in the Authority's public housing program. Please complete the bottom portion of this letter and return one copy of it in the enclosed postpaid envelope to reapply for housing. THIS LETTER MUST BE RECEIVED NO LATER THAN 5 P.M., OR BE POSTMARKED NO LATER THAN MIDNIGHT ON _____, 1988 OR YOU WILL WAIVE YOUR RIGHTS. For further information, contact The Lawyers' Committee For Civil Rights Under The Law,
294 Washington Street
Boston, Massachusetts 02108
(617) 482-1145.

Sincerely,
Doris Bunte
Administrator

--------------------------------------------------

NAME: _____
ADDRESS: _____
TEL. NO.: _____

_____

SIGNATURE

[This letter should notify recipients in all languages commonly spoken in the City of Boston that they may request a copy in their language by calling the BHA at the telephone number supplied.]

EXHIBIT B

*Private Agencies*

Action for Boston Community Development, Inc. (ABCD)
150 Tremont Street
Boston, Massachusetts 02111

ACORN
169 Massachusetts Avenue
Boston, Massachusetts 02115

Alianza Hispana
409 Dudley Street
Roxbury, Massachusetts 02119

Asian American Resource Workshop
27 Beech Street
Boston, Massachusetts 02111

Aswalos House
246 Seaver Street
Dorchester, Massachusetts 02121

Boston Affordable Housing Coalition
32 Rutland Street
Boston, Massachusetts 02118

Boston Housing Partnership
99 Chauncy Street
Boston, Massachusetts 02112

Boston Indian Council
105 South Huntington Street
Boston, Massachusetts 02130

Cape Verdian Community House
339 Dudley Street
Roxbury, Massachusetts 02119

Cardinal Medeiros Day Center
140 Shawmut Avenue
Boston, Massachusetts 02118

Casa Esperanza
291 Eustis Street
Boston, Massachusetts 02119

Casa Myrna Vazquez
P.O. Box 18019
Boston, Massachusetts 02118

Casa Del Sol
2328 Washington Street
Roxbury, Massachusetts 02119

CDC of Boston
801 Albany Street
Roxbury, Massachusetts 02119

Center for Community Action
149 Roxbury Street
Roxbury, Massachusetts 02119

Chinatown Housing and Land Development Task Force
34 Oak Street
Boston, Massachusetts 02111

Chinese Consolidated Ben. Association
90 Tyler Street
Boston, Massachusetts 02111

Christians for Urban Justice
563–A Washington Street
Dorchester, Massachusetts 02124

Dorchester Counseling Center
91 Morton Street
Dorchester, Massachusetts 02124

Dorchester Task Force
1514 A Dorchester Avenue
Dorchester, Massachusetts 02122

East Boston Ecumenical Comm.
Project NOAH
28 Paris Street
Boston, Massachusetts 02128

Ethiopian Family Center, Inc.
140 Clarendon Street
Boston, Massachusetts 02116

Fed. Dorchester Neighborhood House
985 Dorchester Avenue
Dorchester, Massachusetts 02125

Franklin Park Coalition
319 Forest Hill Street
Jamaica Plain, Massachusetts 02130

Franklin Park Dev.
278 Humboldt Avenue
Dorchester, Massachusetts 02121

Freedom House
14 Crawford Street
Dorchester, Massachusetts 02121

Greater Boston Legal Services
68 Essex Street
Boston, Massachusetts 02111

Greater Roxbury CDC
90 Warren Street
Roxbury, Massachusetts 02119

Haitian Multi–Service Center
12 Bicknell Street
Dorchester, Massachusetts 02121

Housing Opportunities Unlimited
320 Mount Vernon Street
Boston, Massachusetts 02125

Hyde Park United
1259 Hyde Park Avenue
Hyde Park, Massachusetts 02136

Inquilinos Boricuas en Accion
405 Shawmut Avenue
Boston, Massachusetts 02118

Jamaica Plain APAC
30 Bickford Street
Jamaica Plain, Massachusetts 02130

Kmhmu Family Association
41 Quint Avenue
Allston, Massachusetts 02134

Lawyers' Committee For Civil Rights Under The Law
294 Washington Street
Boston, Massachusetts 02108

League of Haitian Families
169 Massachusetts Avenue, # 32
Boston, Massachusetts 02115

Legal Services Center
3529 Washington Street
Jamaica Plain, Massachusetts 02130

Lena Park Community Development Corporation
150 American Legion Highway
Dorchester, Massachusetts 02124

Lower Roxbury CDC
122 Dewitt Drive
Roxbury, Massachusetts 02120

Massachusetts Association of Chinese from Indonesia
684 Washington Street
Boston, Massachusetts 02111

Massachusetts Tenants Organization
14 Beacon Street
Boston, Massachusetts 02108

NAACP/Boston Chapter
451 Massachusetts Avenue
Boston, Massachusetts 02118

National Conf. of Puerto Rican Women
JFK Street
P.O. Box 8795
Boston, Massachusetts 02114

NDC of Grove Hall
P.O. Box 123
Dorchester, Massachusetts 02121

Oficina Hispana de la Comunida
125 Amory Street
Roxbury, Massachusetts 02119

Orchard Park Neighborhood House
36 Dearborn Street
Roxbury, Massachusetts 02119

Organization for a New Equality
485 Columbus Avenue
Boston, Massachusetts 02118

Parker Hill/Fenway APAC
1552 Tremont Street
Roxbury, Massachusetts 02119

Project Care and Concern
176 Monticello Avenue
Dorchester, Massachusetts 02125

Roxbury Multi–Service Center
317 Blue Hill Avenue
Roxbury, Massachusetts 02121

Roxbury–North Dorchester NRC
62 Warren Street
Roxbury, Massachusetts 02119

Sociedad Latina
1481 Tremont Street
Roxbury, Massachusetts 02120

South Cove Neighborhood Center
885 Washington Street
Boston, Massachusetts 02111

United S.E./Lower Roxbury CDC
32 Rutland Street
Boston, Massachusetts 02118

United S.E. Settlements
48 Rutland Street
Boston, Massachusetts 02118

Uphams Corner NHS
P.O. Box 700
Dorchester, Massachusetts 02125

Urban Edge
P.O. Box 1209
Jamaica Plain, Massachusetts 02130

Urban Edge
2010 Columbus Avenue
Jamaica Plain, Massachusetts 02130

Urban League of Eastern Massachusetts
236 Huntington Avenue
Boston, Massachusetts 02115

*Public Agencies*

Boston Fair Housing Commission
One City Hall Plaza
Boston, Massachusetts 02201

Massachusetts Commission Against Discrimination
One Ashburton Place
Boston, Massachusetts 02108

Massachusetts Department of Public Welfare
180 Tremont Street
Boston, Massachusetts 02111

Massachusetts Department of Social Services
150 Causeway Street
Boston, Massachusetts 02114

Massachusetts Executive Office of Communities and Development
100 Cambridge Street
Boston, Massachusetts 02202

Massachusetts Executive Office of Human Services
100 Cambridge Street
Boston, Massachusetts 02202

United States Department of Health and Human Services
John F. Kennedy Federal Building
Boston, Massachusetts 02203

United States Department of Housing and Urban Development
10 Causeway Street
Boston, Massachusetts 02114

EXHIBIT C

Allston/Brighton Citizen Item
Bay State Banner
Boston Globe
Boston Herald
Boston Ledger
Brookline Citizen
Charlestown Patriot
Dorchester Argus Citizens
East Boston Times Free Press
El Mundo
Gay Community News
Hyde Park Tribune

Jamaica Plain Citizen
Milton Record Transcript
Sampan
South End Community News

## EXHIBIT D

Associated Press
Boston Business Journal
Boston Greater News
Boston Phoenix
Boston TAB
BU Daily Free Press
Christian Science Monitor
Dorchester Community News
East Boston Community News
La Semana
NAHRO Newsletter
New York Times News Service
South Boston Tribune
The Boston Greater News
Transcript Publishing Group
United Press International
USA Today

## EXHIBIT E

### TELEVISION

WBZ TV Channel 4
WCVB TV Channel 5
WGBH TV Channel 2
WGBX TV Channel 44
WLVI TV Channel 56
WNEV TV Channel 7
WSBK TV Channel 38
NNN/Channel 3

### RADIO

WBUR Radio
WBZ Radio
WCAS Radio
WCRB Radio
WEEI Radio
WERS Radio
WHDH Radio
WHTT Radio
WILD Radio
WMBR Radio
WMJX Radio
WRKO Radio

WROR Radio
WXKS Radio

## EXHIBIT F

### CLAIM FORM

INSTRUCTIONS: If you believe that you were discouraged by the Boston Housing Authority or any of its employees from applying for a unit at a public housing development where your race was in the minority, you may have certain rights and be entitled to certain benefits, regardless of whether you have received housing. In order to qualify you must fill out the attached claim form and submit it to HUD [Address]. YOUR CLAIM FORM MUST BE RECEIVED BY HUD NO LATER THAN 5 P.M., OR BE POSTMARKED NO LATER THAN MIDNIGHT ON _____, OR YOU WILL LOSE RIGHTS OR BENEFITS THAT YOU MAY HAVE BEEN ENTITLED TO AND YOU MAY LOSE THE RIGHT TO HAVE YOUR CLAIM CONSIDERED. Fill in as much information as possible on the form, in as much detail as possible. Attach extra sheets if necessary. For further information, write or call The Lawyers' Committee For Civil Rights Under The Law at (617) 482–1145.

### CLAIM FORM

Name(s) of Head(s) of Household:
 1)
 2)
Address:
Telephone (Day):
Telephone (Night):
Social Security Number(s):
 1)
 2)
Principal Language:
Ethnic Origin:
Date(s) of original (and any subsequent) application(s) to the Boston Housing Authority for housing:

Please state the name(s), address and social security number(s) of the head(s) of household as they appeared on your original application(s):

Did you apply for emergency housing?

How many persons were in your household at the time of your application(s)?

Did you receive a letter from the Boston Housing Authority telling you that you were on the waiting list for housing?

Please list your development choice(s) at the time of your application(s):

Did a statement or act by the Boston Housing Authority or any of its employees influence you in such a way that you did not apply for a development where your race was in the minority?

If so, please describe the circumstances of the statement or act, including where possible:

 (a) the date

 (b) the name of the Boston Housing Authority employee(s) involved

 (c) the nature of the statement or act

 (d) the particular developments (if any), which you were influenced not to apply to

Please give any other information which you believe may be helpful in evaluating your claim:

For the hearing do you need a translator?
 yes _ no _
 What language? _____

Where would you prefer the hearing to be held?

* *Note:* Three community sites to be agreed upon

Place a 1, 2 and 3 next to your first, second and third choices.

___ American Arbitration Association
 230 Congress Street
 Boston, MA—(near South Station)

_____

_____

* _____

When would you prefer hearings to take place?

___ Day (9 a.m.–5 p.m.) ___ Evening (5 p.m.–9 p.m.)

BRING OR MAIL THIS FORM ON OR BEFORE _____ TO:

 HUD

 [Address]

YOUR CLAIM FORM MUST BE RECEIVED BY HUD NO LATER THAN 5 P.M., OR BE POSTMARKED NO LATER THAN MIDNIGHT ON _____.

### ORDER OF REFERENCE

The Plaintiffs National Association For The Advancement Of Colored People, Boston Chapter; Tanya Boman and Annie Hailey, and the Defendants, Boston Housing Authority; Doris Bunte, as she is Administrator of the Boston Housing Authority; and Raymond L. Flynn, as he is Mayor of the City of Boston and Receiver of the Boston Housing Authority; have agreed to amendments to the Court-approved Stipulation of August 26, 1988, which have been submitted to and approved by the Court today. One of the changes made by the amendments pertains to the hearing process for applicants alleged to have been discouraged from applying to a Boston Housing Authority development where the applicant's race did not predominate (Part 1.(B) of the Stipulation). The parties have agreed, and the Court approves, that the hearing process will be administered by the

by the parties to the Stipulation.

American Arbitration Association (hereafter "AAA") and that hearing examiners be appointed by the AAA pursuant to the Procedural Guidelines set forth below. The AAA, although not a party to this lawsuit, has agreed to assume all these responsibilities and to be bound both by the terms of the Stipulation and the following procedural guidelines.

### Procedural Guidelines for the Conduct of Hearings

The following procedures supplement the Stipulation in this case, with respect to the administration and conduct of hearings contemplated therein. Any conflict between this document and the Stipulation shall be governed by terms of the Stipulation.

As used herein the term "participant(s)" shall mean the claimant whose claim is the subject of the individual hearing in question, and the Boston Housing Authority ("BHA").

### I. *Intake*

A. The American Arbitration Association ("AAA") will receive all claim forms at its offices. All claim forms received by AAA or the BHA will be date stamped. BHA will promptly provide to AAA the original of any claim form returned to it.

B. All claim forms will be docketed upon receipt.

C. Acknowledgement letters, with copies of the completed claim forms, will be mailed promptly to claimants by AAA.

D. Copies of claim forms will be mailed by AAA upon receipt and docketing to BHA and the Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association ("LCCR").

E. At or near the end of the claim period, AAA will commence scheduling of cases. AAA will entertain, but not be bound by, any requests of the participants regarding the date for a hearing. To the degree possible, AAA will accommodate claimants' requests regarding location and time for the initial hearing. Upon scheduling, AAA will send notice of hearings to the participants and their designated attorneys or advocates which will specify date, time, place and name of hearing examiner. AAA shall mail notices of hearings at least 14 days prior to the hearing.

### II. *Panel Composition*

A. The panel size shall be 15 hearing examiners. Each hearing examiner shall hear no more than 3 cases before rendering written decisions. The total number of cases to be heard by one hearing examiner shall not exceed 10.

B. Criteria for serving as a hearing examiner.

1. Hearing examiners may be lawyers or non-lawyers, provided that the non-lawyers are experienced arbitrators as determined by the AAA.

2. Hearing examiners must agree to attend one training session.

3. Hearing examiners must agree to abide by the terms of the Stipulation, including specifically the standards for determining "discouraged."

4. Hearing examiners must not have conflicts of interest or be biased. Without limiting the generality of the foregoing, at the present time or for the past three years:

(*a*) Hearing examiners must not have been an employee of the Boston Housing Authority ("BHA"), Doris Bunte, the City of Boston, Mayor Raymond L. Flynn, U.S. Department of Housing and Urban Development ("HUD"), Secretary Samuel Pierce, Executive Office of Communities and Development ("EOCD"), Secretary Amy Anthony, Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association, National Association for the Advancement of Colored People, Boston Chapter ("NAACP"), any counsel or firm of record in this (principal) case, or any firm, association or organization which will represent any claimant to appear before any hearing examiner.

(*b*) Hearing examiners must not have been a member of the respective

boards of directors of any entity listed above, or a member of the NAACP.

(c) The hearing examiner must not have had a financial interest, or be negotiating regarding a prospective financial interest, or be an immediate relative to a principal or have any partnership interest in any business or concern of any of the persons or organizations named in this paragraph II(B)(4).

## C. *Process for Selecting Panel*

1. The AAA will propose panel members, along with a resume or description of background sufficient to inform the parties to the Stipulation. The AAA will undertake considerable effort to propose hearing examiners reflective of the racial diversity of the City of Boston as set forth in C.3 below.

2. The Plaintiffs collectively (NAACP, Boman, Hailey) and the BHA Defendants collectively (BHA, Flynn, Bunte) each may peremptorily eliminate up to five proposed hearing examiners from the panel, provided that no peremptory challenges may be based solely on race of the proposed hearing examiner. Either of these parties may propose to the AAA that additional hearing examiners be eliminated from the panel for cause. The AAA shall decide in its sole discretion whether there is sufficient cause to eliminate any such additional panel member.

3. In the event AAA determines that there are not a sufficient number of agreed-upon panel members, or the panel does not have a membership of 9 minorities, which shall include 3 Asians, 3 Blacks, 3 Hispanics, and 6 others, AAA shall ask each party to propose an agreed-upon additional number of panel members to meet the requirements for the agreed upon racial composition and size of the panel. Such additional panel members only can be challenged by the parties to the Stipulation for cause. The AAA shall decide in its sole discretion whether there is sufficient cause to eliminate any such additional panel member.

4. The timing and process for challenges to proposed panel members shall be determined by AAA.

## III. *Hearing Locations and Timing*

A. Hearings shall be held at the 230 Congress Street offices of the AAA or at one of the three designated community sites to be determined by AAA giving regard to the preferences of the claimant and hearing examiner.

B. Hearings shall be held either during the work day or in the evening, to be determined by AAA giving regard to the preferences of the claimant and hearing examiners.

## IV. *Hearing Process*

A. All hearings shall be taped. AAA shall arrange for the provision of the tape machines and tapes if possible; otherwise, BHA will provide them.

B. Within seven (7) days of the hearing either of the participants may submit supplemental written evidence to the hearing examiner, provided that notice of intent to submit such evidence was given at the hearing and a copy of the evidence is provided simultaneously to the opposing party. A hearing examiner may schedule a supplemental hearing to take additional testimony, or take any other action s/he deems appropriate, to assure fairness to both participants with respect to such supplemental evidence. Without limiting the generality of the foregoing, a hearing examiner may postpone a hearing or schedule at an appropriate time and place a supplemental hearing, if requested by either of the participants where either seeks to submit rebuttal evidence not available prior to the original hearing, or where either of the participants is unable to procure attendance of witnesses or employees.

C. The hearing examiner shall render his/her decision within twenty-one (21) days of the hearing.

D. A written report will be prepared by the hearing examiner, be dated and signed and shall have attached all written documentation submitted. A copy of the deci-

sion will be mailed to all parties and their counsel or representative.

E. Following the rendering of a decision, the tape of the hearing shall be filed with case materials at AAA. Either participant may transcribe the tape at its own expense.

## V. *Rescheduling and Default*

A. Each participant shall be entitled to one postponement by notifying the AAA and the opposing participant at least 24 hours prior to the scheduled hearing. Any further postponements must be based on good cause. In no event shall any participant be allowed more than two postponements.

B. Any participant who fails to show for a duly scheduled hearing shall be defaulted except upon good cause promptly brought to the attention of the hearing examiner. Decisions regarding defaults shall be made by the hearing examiner in his/her sole discretion, and shall be final.

### APPENDIX B

1. Within 30 days after execution of the Settlement Agreement, BHA defendants shall provide plaintiffs' counsel a list of the names, last known addresses and social security numbers, if available, of all class members. The list must identify all class members who are eligible to receive payment under § VII, ¶¶ A–B, § V(E) of the Settlement Agreement.

2. Within 30 days after approval by the Court of the Hearing Notice and Legal Notice, whichever approval occurs later, BHA defendants shall mail the Hearing Notice pursuant to § V(F), 2nd and 3rd paragraphs of the Settlement Agreement.

3. On a Thursday within 30 days after the approval by the Court of the Hearing Notice and the Legal Notice, whichever approval occurs later, BHA defendants shall cause to be published the first Legal Notice, with the second publication to follow in two weeks, pursuant to § V(F), fourth paragraph of the Settlement Agreement.

4. Forty days after the BHA defendants have mailed the Hearing Notice, and at least 7 days after the second publication of the Legal Notice, the Court shall conduct the hearing on the motion for certification of class under F.R.C.P. 23(b)(2) and the motion for approval of the Settlement Agreement.

5. Within 10 days after the Court's ruling on the motion for approval of the Settlement Agreement, the Court and the parties are to name members of the Advisory Board pursuant to § IX, second paragraph of the Settlement Agreement.

6. Within 21 days after the Court's approval of the Settlement Agreement and the Claim Notice, whichever approval occurs later, BHA defendants shall mail the Claim Notice and application form to each and every class member designated for payment by § VII, ¶ A–C of the Settlement Agreement.

7. Twenty-five days after the mailing of the Claim Notices by the BHA defendants pursuant to paragraph 6 above, plaintiffs shall provide to BHA defendants control names, addresses and social security numbers as required by § V(G) of the Settlement Agreement.

8. Thirty days after the mailing of the Claim Notices by the BHA defendants pursuant to paragraph 6 above, the BHA defendants shall submit to the agencies making the computer matches under § V, ¶ G, the names and social security numbers of those class members who were sent the Claim Notice and whose Claim Notices were returned undelivered by the U.S. Postal Service. The BHA defendants shall submit names and social security numbers of class members whose Claim Notices later are returned undelivered by the U.S. Postal Service, but those submissions shall not affect the timing of the Listing Notices as required by § 5, paragraph (H) of the Settlement Agreement and paragraph 9 below. The BHA defendants shall also expeditiously provide the agencies making the matches with full copies of the Claim Notice and application, together with envelopes, to be mailed by such agencies to each person for whom there is a match.

9. On the first Thursday which is more than 30 days after the mailing of Claim Notices by the agencies conducting the computer matches pursuant to section V paragraph (G) of the Settlement Agreement and paragraph 8 above, the BHA defendants shall cause to be published the Listing Notice containing the names of a) all class members who were sent the Claim Notice only in the original BHA mailing and whose Claim Notices were returned undelivered by the U.S. Postal Service; or b) who were sent the Claim Notices in the original BHA mailing and the computer match and whose Claim Notices were returned undelivered both times by the U.S. Postal Service. The second date of publication shall be on the first Thursday after 30 days after the date of the first publication of the Listing Notice.

C. At his/her discretion the hearing examiner may reschedule a hearing for inclement weather or other extraordinary circumstances.

I hereby order that hearings pursuant to Part 1.(B) of the Stipulation shall be conducted, and the hearing process shall be administered by the AAA, according to the Stipulation as amended and the foregoing Procedural Guidelines.

_____
Honorable Joseph L. Tauro
United States District Judge

_____
Date

On behalf of the American Arbitration Association I agree to the terms of this Order of Reference.

/s/ Richard M. Reilly
(Richard M. Reilly)
Regional Vice President—AAA
(Title)
9/29/88
Date

_____
(Christine Newhall)

_____
(Title)

_____
Date

## STIPULATION OF DISMISSAL OF DEFENDANT MASSACHUSETTS EXECUTIVE OFFICE OF COMMUNITIES AND DEVELOPMENT

(Dated Boston, Massachusetts
October 4, 1989)

The plaintiffs and defendants the Massachusetts Executive Office of Communities and Development and its Secretary in her official capacity ("EOCD"), parties to the above action (the "Parties"), hereby stipulate and agree as follows:

WHEREAS, plaintiffs instituted this civil action against, *inter alia*, defendant EOCD, on or about May 17, 1988; and

WHEREAS, plaintiffs and defendant EOCD mutually desire to settle and terminate plaintiffs' claims against EOCD without further costly and protracted litigation, as discussed at numerous status conferences held by the Court and pursuant to the terms and conditions set forth below;

NOW THEREFORE, without trial of the issues raised herein, the Parties hereby agree as follows:

1. Plaintiffs agree to the dismissal with prejudice of this case against EOCD.

2. The Parties expressly agree and intend that, if and when it is endorsed by the Court, this Stipulation shall be in full and final accord and satisfaction of any and all claims asserted in or which could have been asserted in the litigation and that each Party will bear its own attorneys' fees and costs. However, nothing in this Stipulation

shall prohibit payment by the Boston Housing Authority ("BHA"), the City of Boston, Doris Bunte as she is Administrator of the BHA, or Raymond L. Flynn as he is Mayor of the City of Boston and Receiver of the BHA (collectively, the "City Defendants"), of plaintiffs' attorneys fees. Nor shall anything in this Stipulation affect any claim against the City Defendants, or any of them, or against defendant U.S. Department of Housing and Urban Development.

3. This Stipulation is contingent upon the Court's approval of the separate settlement agreement negotiated between plaintiffs and the City Defendants after the "fairness" hearing to be held in this action pursuant to F.R.Civ.P. 23(d) and (e).

WHEREFORE, the Parties to this Stipulation, by their undersigned representatives, have duly caused this Stipulation to be executed on their behalf as follows:

National Association for the Advancement of Colored People, Boston Chapter, Tanya Boman and Annie Hailey

By their attorneys,
/s/ Barbara R. Arnwine
Barbara R. Arnwine BBO # 543143
Lawyers' Committee for Civil
Rights Under Law
1400 Eye Street, Suite 400
Washington, DC 20005
(202) 371-1212

/s/ Nadine Cohen
Nadine Cohen BBO # 090040
Lawyers' Committee For Civil
Rights Under Law
294 Washington Street
Boston, Massachusetts 02108
(617) 482-1145

/s/ Everald Thompson
Everald Thompson
National Association for the
Advancement of Colored People
National Office
4805 Mt. Hope Drive
Baltimore, Maryland 21215
(301) 486-9185

/s/ William P. Stimson
Laura Steinberg BBO # 478440
William P. Stimson BBO # 481010
Lynn Peterson Read BBO # 551671
Sullivan & Worcester
One Post Office Square
Massachusetts 02109
(617) 338-2800

Massachusetts Executive
Office of Communities and
Development and Amy S.
Anthony, Secretary

By their attorneys,
/s/ Douglas H. Wilkins
Douglas H. Wilkins BBO # 528000
Assistant Attorney General
John W. McCormack State
Office Building
One Ashburton Place
Boston, Massachusetts 02108-1698
(617) 727-2200

DISMISSAL WITH PREJUDICE SO ORDERED:

/s/ Joseph L. Tauro
Joseph L. Tauro
United States District Judge

STIPULATION OF DISMISSAL BETWEEN PLAINTIFFS AND U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

(Dated Boston, Massachusetts
October 4, 1989)

The plaintiffs and defendants the United States Department of Housing and Urban Development and its Secretary in his official capacity (collectively, "HUD"), parties to the above action (the "Parties"), hereby stipulate and agree as follows:

WHEREAS, plaintiffs instituted this civil action against, *inter alia*, HUD, on or about May 17, 1988; and

WHEREAS, plaintiffs and defendant HUD mutually desire to settle and termi-

nate plaintiffs' claims against HUD without further costly and protracted litigation, as discussed at numerous status conferences held by the Court and pursuant to the terms and conditions set forth below; and

WHEREAS, the separate settlement agreement negotiated between plaintiffs, the Boston Housing Authority ("BHA"), Doris Bunte as she is Administrator of the BHA, the City of Boston, and Raymond L. Flynn as he is Mayor of the City of Boston and Receiver of the BHA, (the "BHA Settlement") satisfies many of the claims by plaintiffs in the present action; and

WHEREAS, plaintiffs believe that the Declaratory Judgment and Final Decree entered in *National Association for the Advancement of Colored People v. Jack Kemp, Secretary of Housing and Urban Development, et al.*, United States District Court for the District of Massachusetts, Civil Action No. 78–0850–S, satisfies many of the claims by plaintiffs in the present action as to HUD;

NOW THEREFORE, without trial of the issues raised herein, the Parties hereby agree as follows:

1. Plaintiffs agree to the dismissal of all of their claims against HUD in this lawsuit with prejudice to the relitigation of such claims in this or any other forum.

2. This Stipulation shall not constitute any admission by HUD of any liability of any kind whatsoever.

3. The Parties expressly agree and intend that, if and when it is endorsed by the Court, this Stipulation shall be in full and final accord and satisfaction of any and all claims asserted in or which could have been asserted in the litigation and that each Party will bear its own costs.

4. Plaintiffs further agree not to seek an order directing HUD to pay to plaintiffs or their counsel any attorneys' fees. Notwithstanding the foregoing, nothing in this Stipulation shall prohibit payment by the BHA, or its representatives, of plaintiffs' attorneys' fees.

5. The terms of this Stipulation may not be altered or modified in any way except upon the express written consent of the Parties.

6. The Stipulation constitutes the entire understanding of the Parties and shall become effective upon execution by the Parties and endorsement by the Court ordering plaintiffs' claims against HUD dismissed with prejudice.

7. This Stipulation is contingent upon the Court's approval of the BHA Settlement after the "fairness" hearing to be held in this action pursuant to F.R.Civ.P. 23(d) and (e).

WHEREFORE, the Parties to this Stipulation, by their undersigned representatives, have duly caused this Stipulation to be executed on their behalf as follows:

National Association for the Advancement of Colored People, Boston Chapter, Tanya Boman and Annie Hailey

By their attorneys,

/s/ Barbara R. Arnwine
Barbara R. Arnwine BBO # 543143
Lawyers' Committee for Civil Rights Under Law
1400 Eye Street, Suite 400
Washington, DC 20005
(202) 371–1212

/s/ Nadine Cohen
Nadine Cohen BBO # 090040
Lawyers' Committee for Civil Rights Under Law
294 Washington Street
Boston, Massachusetts 02108
(617) 482–1145

/s/ Everald Thompson
Everald Thompson
National Association for the Advancement of Colored People National Office, 4805 Mt. Hope Drive
Baltimore, Maryland 21215
(301) 486–9185

/s/ William P. Stimson
Laura Steinberg BBO # 478440
William P. Stimson BBO # 481010
Lynn Peterson Read BBO # 551671
Sullivan & Worcester
One Post Office Square
Boston, Massachusetts 02109
(617) 338–2800

United States Department of Housing and Urban Development and Jack Kemp, Secretary

By their attorneys,
Wayne A. Budd
United States Attorney

/s/ Judith Yogman
Judith Yogman BBO # 537060
Associate U.S. Attorney
1107 U.S. Post Office & Courthouse
Boston, Massachusetts 02109
(617) 223-9387

/s/ Anthony J. Ciccone (J Sy)
Anthony J. Ciccone
Trial Attorney, Room 10258
HUD Office of Litigation
Washington, DC 20410-0500
(202) 755-4942

Of Counsel:

/s/ Howard M. Schmeltzer (J Sy)
Howard M. Schmeltzer
Assistant General Counsel for Litigation,
U.S. Department of Housing and Urban Development

SO ORDERED:
/s/ Joseph L. Tauro
Joseph L. Tauro
United States District Judge